**Nos. 24-1799(L), 24-1834, 24-1836**

### IN THE UNITED STATES COURT OF APPPEALS
### FOR THE FOURTH CIRCUIT

───────────────────────────────

SUSANNAH WARNER KIPKE, *et al.*,

*Plaintiffs-Appellants / Cross-Appellees*,

v.

WES MOORE, *et al.*,

*Defendants-Appellees / Cross-Appellants*,

───────────────────────────────

KATHERINE NOVOTNY, *et al.*,

*Plaintiffs-Appellants / Cross-Appellees*,

v.

WESLEY MOORE, *et al.*,

*Defendants-Appellees / Cross-Appellants*,

───────────────────────────────

On Appeal from the United Stated District Court
for the District of Maryland
No. 1:23-cv-01293-GLR
No. 1:23-cv-01295-GLR

───────────────────────────────

### PLAINTIFFS-APPELLANTS / CROSS-APPELLEES'
### MOTION TO STAY THE MANDATE

───────────────────────────────

(Counsel listed on following page)

John Parker Sweeney
James W. Porter, III
William Chadwick Lamar, Jr.
BRADLEY ARANT BOULT CUMMINGS LLP
1900 K Street, NW
Suite 800
Washington, DC 20006
Phone: (202) 719-8216
jsweeney@bradley.com
jporter@bradley.com
clamar@bradley.com

*Attorneys for Plaintiffs-Appellants /
Cross-Appellees Susannah Warner Kipke
and Maryland State Rifle and Pistol
Association, Inc.*

David H. Thompson
Peter A. Patterson
Megan Marie Wold
William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
Phone: (202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
mwold@cooperkirk.com
wbergstrom@cooperkirk.com

*Attorneys for Plaintiffs-Appellants /
Cross-Appellees Katherine Novotny,
Sue Burke, Esther Rossberg,
Maryland Shall Issue, Inc., Second
Amendment Foundation, and
Firearms Policy Coalition*

Mark W. Pennak
LAW OFFICES OF MARK W. PENNAK
7416 Ridgewood Ave.
Chevy Chase, MD 20815
Tel: (301) 873-3671
mpennak@marylandshallissue.org

*Attorney for Plaintiffs-Appellants /
Cross-Appellees Katherine Novotny,
Sue Burke, Esther Rossberg,
Maryland Shall Issue, Inc., Second
Amendment Foundation, and
Firearms Policy Coalition*

Plaintiffs-Appellants/Cross-Appellees ("Plaintiffs") respectfully move this Court under Federal Rule of Appellate Procedure 41(d)(1) and Fourth Circuit Rule 41 to stay issuance of the mandate to preserve the status quo pending the filing and disposition of their forthcoming petition for a writ of certiorari in the Supreme Court of the United States. Counsel for Defendants-Appellees/Cross-Appellants (collectively, the "State") have been advised of this motion and object to a stay of the mandate.

This Court may stay issuance of the mandate if a petition for writ of certiorari "would present a substantial question and . . . there is good cause for a stay." FED. R. APP. P. 41(d)(1); *accord* 4TH CIR. R. 41. Plaintiffs satisfy both requirements. The panel majority's decision involves important questions about the scope of the right to keep and bear arms in public places, an issue closely related to others that the Supreme Court has recently addressed or indicated its intention to address. The panel majority's decision also upends the status quo because issuance of the mandate will render Plaintiffs unable to lawfully carry firearms within 1,000 feet of public demonstrations or at establishments that sell alcohol for onsite consumption—*i.e.*, locations that were the subject of the district court's injunction but that the panel majority reversed on appeal. Plaintiffs will thus suffer irreparable harm from the inability to exercise their constitutional rights during the pendency of their petition.

This Court should stay the mandate pending Plaintiffs' petition for a writ of certiorari.

## REASONS FOR GRANTING THE STAY

This Court will grant a motion to stay the mandate pending a petition for a writ of certiorari if the "petition would present a substantial question" and "there is good cause for a stay." FED. R. APP. P. 41(d)(1); *accord* 4TH CIR. R. 41. Plaintiffs satisfy both requirements.

## I.    Plaintiffs' Petition Will Present a Substantial Question.

A petition presents a substantial question if there is a reasonable "probability that four Justices will vote to grant certiorari and a reasonable possibility that five Justices will vote to reverse." *United States ex rel. Chandler v. Cook County*, 282 F.3d 448, 450 (7th Cir. 2002) (Ripple, J., in chambers). In reviewing a motion to stay the mandate, this Court's task is "not to determine [its] own view on the merits, but rather to determine the prospect of reversal" by the Supreme Court. *Rostker v. Goldberg*, 448 U.S. 1306, 1309 (1980) (Brennan, J., in chambers). There is a reasonable probability that the Supreme Court will grant Plaintiffs' petition and reverse because this appeal involves highly contested questions in which the Supreme Court has shown interest.

First, the Supreme Court's pending decision in *Wolford v. Lopez*, No. 24-1046 (U.S.) (argued Jan. 20, 2026), suggests that the prospect that the Supreme Court

grants Plaintiffs' petition and vacates this Court's decision is unusually high for multiple reasons. The Ninth Circuit's decision in *Wolford* affirmed an injunction against California's total ban on firearms on public transportation, holding that "Plaintiffs are likely to succeed in their challenge to California's broad prohibition on the carry of firearms on public transit." *Wolford v. Lopez*, 116 F.4th 959, 1002 (9th Cir. 2024), *cert. granted on other grounds*, 146 S. Ct. 79 (2025). The panel majority sustained precisely the same ban both "under the proprietary property doctrine" and as consistent "with our historical tradition." Op. at 15–21. That direct conflict makes certiorari more likely. *See* SUP. CT. R. 10. And the Supreme Court recently called for a response to a petition for writ of certiorari that presents an identical issue, *see Schoenthal v. Raoul*, No. 25-541 (U.S.), thus exhibiting the Court's interest in the question.

More broadly, *Wolford* gives the Supreme Court another opportunity to apply *Bruen*'s historical-analogue approach and provide additional guidance to lower courts. When the Supreme Court last applied that approach in *United States v. Rahimi*, 602 U.S. 680 (2024), it then granted **27** petitions for writs of certiorari (presenting a wide range of Second Amendment issues), vacated the judgments below, and remanded ("GVR") for further consideration in light of *Rahimi*. *Garland v. Range*, 144 S. Ct. 2706 (2024); *United States v. Daniels*, 144 S. Ct. 2707 (2024); *United States v. Perez-Gallan*, 144 S. Ct. 2707 (2024); *Vincent v. Garland*, 144 S.

Ct. 2708 (2024); *Antonyuk v. James*, 144 S. Ct. 2709 (2024); *Jackson v. United States*, 144 S. Ct. 2710 (2024); *Doss v. United States*, 144 S. Ct. 2712 (2024); *Cunningham v. United States*, 144 S. Ct. 2713 (2024); *Farris v. United States*, 145 S. Ct. 122 (2024); *Willis v. United States*, 145 S. Ct. 122 (2024); *Borne v. United States*, 145 S. Ct. 123 (2024); *Paris v. Lara*, 145 S. Ct. 369 (2024); *Pierre v. United States*, 145 S. Ct. 412 (2024); *Kirby v. United States*, 145 S. Ct. 430 (2024); *Mayfield v. United States*, 145 S. Ct. 430 (2024); *Talbot v. United States*, 145 S. Ct. 430 (2024); *Hoeft v. United States*, 145 S. Ct. 431 (2024); *Lindsey v. United States*, 145 S. Ct. 431 (2024); *Canada v. United States*, 145 S. Ct. 432 (2024); *Jones v. United States*, 145 S. Ct. 432 (2024); *Dubois v. United States*, 145 S. Ct. 1041 (2025); *Rambo v. United States*, 145 S. Ct. 1163 (2025); *Whitaker v. United States*, 145 S. Ct. 1165 (2025); *Morrissette v. United States*, 145 S. Ct. 1468 (2025); *Gray v. United States*, 145 S. Ct. 1896 (2025); *Dial v. United States*, 145 S. Ct. 2697 (2025); *Williams v. United States*, 145 S. Ct. 2775 (2025).

The Supreme Court is currently holding a sizeable number of petitions for certiorari on Second Amendment issues. *See, e.g.*, *Nat'l Rifle Ass'n v. Glass*, No. 24-1185 (U.S.) (no docket activity since the Oct. 29, 2025, distribution for conference on Nov. 14, 2025). These holds are similar to the treatment of other petitions around the time of *Rahimi* and set the stage for either grants or GVRs after a decision in *Wolford* and in another pending case, *United States v. Hemani*, No. 24-1234 (U.S.),

4

scheduled for argument on March 2, 2026. The prospect of a similar spate of certiorari grants following *Wolford* and *Hemani* places Plaintiffs' forthcoming petition in a unique category and underscores just how reasonable the prospect of a grant is.

Second, this appeal raises the question of the standards that govern restrictions on the possession of firearms in so-called "sensitive places," an issue that has also received attention from the Supreme Court. As discussed, the Supreme Court recently ordered a response to a petition for writ of certiorari that presents that question in the context of a challenge to Illinois's ban on the possession of firearms in public transportation. *See Schoenthal v. Raoul*, No. 25-541 (U.S.). The call for a response indicates an interest in the issue of public carry of firearms. Meanwhile, the Third Circuit recently granted rehearing en banc in a similar challenge to New Jersey's "sensitive places" law. *Koons v. Att'y Gen. N.J.*, 156 F.4th 210 (3d Cir. 2025), *reh'g en banc granted*, 162 F.4th 100 (3d Cir. 2025). The en banc Third Circuit will likely decide that appeal after the Supreme Court's decision in *Wolford*, and that decision has the potential to create one or more direct conflicts with the panel majority's decision in this appeal.

The growing number of decisions on this issue increases the likelihood that the Supreme Court will grant certiorari to decide it, *cf. Snope v. Brown*, 145 S. Ct. 1534, 1534 (2025) (Kavanaugh, J., respecting the denial of certiorari) ("The AR-15

5

issue was recently decided by the First Circuit and is currently being considered by several other Courts of Appeals. . . . Additional petitions for certiorari will likely be before this Court shortly and, in my view, this Court should and presumably will address the AR-15 issue soon, in the next Term or two."), especially because the Supreme Court has previously had "no occasion to comprehensively define 'sensitive places,'" *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 30 (2022).

Third, this appeal raises the question of the extent to which historical sources from after the Founding may inform the Second Amendment inquiry. This issue previously caught the Supreme Court's attention in *Bruen* when it acknowledged, but did not resolve, "ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope." *Id.* at 37. In *Rahimi*, the Court likewise noted but found it unnecessary to reach this issue directly. 602 U.S. at 692 n.1. Yet *Rahimi* nonetheless stated that a "court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck *by the founding generation* to modern circumstances.'" *Id*. at 692 (quoting *Bruen*, 597 U.S. at 29) (emphasis added); *see also* Op. at 47 (Agee, J., dissenting in part). Justice Barrett has likewise cautioned against "freewheeling reliance on historical practice from the mid-to-late 19th century." *Bruen*, 597 U.S. at 83 (Barrett, J., concurring).

The panel majority's view that the "sources [courts] look to at *Bruen* step two can come [from] throughout American history," Op. at 13, diverges from those authorities and that of the Eleventh Circuit, which has noted the "preeminence of Founding-era sources" and expressed skepticism that "historical practice from the mid-to-late nineteenth century" may do anything more than "confirm the Founding-era understanding of the Second Amendment." *Nat'l Rifle Ass'n v. Bondi*, 133 F.4th 1108, 1116 (11th Cir. 2025) (en banc). Other circuits have also staked out positions that are contrary to the panel majority's on this issue. *See, e.g.*, *Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 441 (3d. Cir. 2025) ("[T]he constitutional right to keep and bear arms should be understood according to its public meaning in 1791."); *Reese v. BATFE*, 127 F.4th 583, 599–600 (5th Cir. 2025) ("[T]he scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791)" (citation omitted); *Worth v. Jacobson*, 108 F.4th 677, 692 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 1924 (2025) ("*Bruen* strongly suggests that we should prioritize Founding-era history.").

These substantial questions are relevant to a greater one: to what extent may the government limit the "general right to publicly carry arms for self-defense." *Bruen*, 597 U.S. at 31. *Bruen* recognized that the right presumptively extends to all "places of public congregation." *Id.* But the panel majority held that Maryland may

prohibit the possession of firearms on public transportation, at public demonstrations and establishments that sell alcohol, and in state parks, state forests, and museums, among other places. Op. at 6–8. Plaintiffs' petition for writ of certiorari will pose the question whether exceptions to the "general right to publicly carry" swallow the rule. That issue is undoubtedly important to the law and to everyday people seeking clarity about the extent to which "ordinary, law-abiding citizens have a . . . right to carry handguns publicly for their self-defense," *Bruen*, 597 U.S. at 9. *Cf. Rostker*, 448 U.S. at 1309 ("The importance of the question and the substantiality of the constitutional issues are beyond cavil.").

The attention that the Supreme Court has given these important and unsettled questions, which have continued to percolate in the courts of appeals, suggests a reasonable probability that four Justices vote to grant Plaintiffs' petition. The highly contested nature of these issues related to the application of *Bruen*'s historical-analogue approach suggests that the prospect of reversal is sufficiently "fair" too. *Rostker*, 448 U.S. at 1309; *see also Rahimi*, 602 U.S. at 711 (2024) (Gorsuch, J., concurring) ("Discerning what the original meaning of the Constitution requires in this or that case may sometimes be difficult.").

## II.   Good Cause Exists for a Stay.

Good cause also supports Plaintiffs' stay request. Despite Maryland's broad public-carry restrictions, Plaintiffs have been free to exercise their constitutional

8

right to keep and bear arms within 1,000 feet of public demonstrations and at establishments that sell alcohol for consumption onsite during the pendency of this action. The district court granted a preliminary injunction against enforcement of Maryland's restrictions in those locations in September 2023, JA1003–1004, and the restrictions have been enjoined ever since. Maryland did not seek a stay of the district court's decision pending appeal either. Issuance of the mandate will upset this status quo.

In addition to altering the status quo, issuance of the mandate will irreparably injure Plaintiffs. *See Senne v. Village of Palatine*, 695 F.3d 617, 619 (7th Cir. 2012) (Ripple, J., in chambers) (noting irreparable injury can show good cause to support a stay). If the mandate issues, Plaintiffs will lose the ability to exercise their right to keep and bear arms within 1,000 feet of public demonstrations and at establishments that sell alcohol for consumption onsite. Overnight, thousands of restaurants in Maryland will become gun-free zones, even for individuals who have carry permits issued by the Maryland State Police. The risk of arrest and prosecution is substantial.

This Court has long recognized that "the denial of a constitutional right . . . constitutes irreparable harm for purposes of equitable jurisdiction." *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987); *accord Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022); *Grimmett v. Freeman*, No. 22-1844, 2022 WL 3696689, at *2 (4th Cir. Aug. 25, 2022). Just as the "loss of First Amendment freedoms, for even

9

minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976), so too must the loss of Second Amendment freedoms if it the right to keep and bear arms is truly "not 'a second-class right,'" *Bruen*, 597 U.S. at 70 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) (plurality op.)). Accordingly, this Court should follow in the footsteps of the Ninth Circuit, which granted a stay of the mandate in *Wolford* to preserve a preliminary injunction against a Hawaii law that prohibited the carry of firearms on private property without the property owner's express permission. Mot. to Stay Mandate at 1–2, *Wolford v. Lopez*, No. 23-16164 (9th Cir. Jan. 15, 2025), Dkt. No. 112; Order at 1, *Wolford v. Lopez*, No. 23-16164 (9th Cir. Jan. 17, 2025), Dkt. No. 114.

As evidenced by Judge Agee's partial dissent, Op. at 69–74, 90–93, and the district court's ruling, the constitutionality of restrictions on public carry near public demonstrations and at establishments that sell alcohol is especially contestable. Given the highly contested nature of those restrictions in particular, the best course is to permit Plaintiffs to continue the exercise of their constitutional rights in those locations during the pendency of their petition, just as they have done the past two-and-a-half years without any harm to the State.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court grant their motion to stay issuance of the mandate pending the filing and disposition of their petition for writ of certiorari.

Dated: January 30, 2026

/s/*John Parker Sweeney*
John Parker Sweeney
James W. Porter, III
William Chadwick Lamar, Jr.
BRADLEY ARANT BOULT CUMMINGS LLP
1900 K Street, NW
Suite 800
Washington, DC 20006
Phone: (202) 719-8216
jsweeney@bradley.com
jporter@bradley.com
clamar@bradley.com

*Attorneys for Plaintiffs-Appellants /
Cross-Appellees Susannah Warner Kipke
and Maryland State Rifle and Pistol
Association, Inc.*

Respectfully Submitted,

/s/*David H. Thompson*
David H. Thompson
Peter A. Patterson
Megan Marie Wold
William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
Phone: (202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
mwold@cooperkirk.com
wbergstrom@cooperkirk.com

*Attorneys for Plaintiffs-Appellants /
Cross-Appellees Katherine Novotny,
Sue Burke, Esther Rossberg,
Maryland Shall Issue, Inc., Second
Amendment Foundation, and
Firearms Policy Coalition*

/s/*Mark W. Pennak*
Mark W. Pennak
LAW OFFICES OF MARK W. PENNAK
7416 Ridgewood Ave.
Chevy Chase, MD 20815
Tel: (301) 873-3671
mpennak@marylandshallissue.org

11

*Attorney for Plaintiffs-Appellants /
Cross-Appellees Katherine Novotny,
Sue Burke, Esther Rossberg,
Maryland Shall Issue, Inc., Second
Amendment Foundation, and
Firearms Policy Coalition*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of FED. R. APP. 27(d)(2)(A) because this motion contains 2,495 words, excluding the parts of the motion exempted by FED. R. APP. 27(d)(2) and 32(f).

This motion complies with the typeface requirements of FED. R. APP. 32(a)(5) and the typestyle requirements of FED. R. APP. 32(a)(6) because this motion has been prepared in proportionally spaced typeface, 14-point Times New Roman font, using Microsoft Word.

Dated: January 30, 2026

/s/ *David H. Thompson*
David H. Thompson

*Counsel for Plaintiff-Appellants /*
*Cross-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2026, I electronically filed the foregoing motion with the Clerk of this Court by using the appellate CM/ECF system. The participants in this case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

Dated: January 30, 2026                  /s/ *David H. Thompson*
                                         David H. Thompson

                                         *Counsel for Plaintiff-Appellants /*
                                         *Cross-Appellees*

14